IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**SUSAN E. RYAN,**
**AS ADMINISTRATOR OF THE ESTATE OF**
**BRIAN MCDONALD,**
*Plaintiff/Appellee,*

*v.*

**MARK NAPIER, PIMA COUNTY SHERIFF; AND JOSEPH KLEIN,**
*Defendants/Appellants.*

No. CV-17-0325-PR
Filed August 23, 2018

Appeal from the Superior Court in Pima County
The Honorable Catherine M. Woods, Judge
No. C20142895
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
243 Ariz. 277 (App. 2017)
**VACATED**

COUNSEL:

Barbara LaWall, Pima County Attorney, Nancy J. Davis (argued), Deputy County Attorney, Tucson, Attorneys for Mark Napier, Pima County Sheriff, and Joseph Klein

Amy Hernandez (argued), Dwyer Hernandez, P.C., Tucson, Attorneys for Susan E. Ryan

Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson; David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Nicholas D. Acedo, Jacob B. Lee, Struck Love Bojanowski & Acedo, PLC, Chandler, Attorneys for Amici Curiae League of Arizona Cities and Towns, Arizona Association of Chiefs of Police, Arizona Municipal Risk Retention Pool, Apache County Sheriff Joe Dedman, Cochise County Sheriff Mark Dannels, Coconino County Sheriff Jim Driscoll, Gila County Sheriff Adam Shepherd, Graham County Sheriff Preston Allred, Greenlee County Sheriff Tim Sumner, La Paz County Sheriff Bill Risen, Maricopa County Sheriff Paul Penzone, Mohave County Sheriff Doug Schuster, Navajo County Sheriff Kelly Clark, Pinal County Sheriff Mark Lamb, Santa Cruz County Sheriff Tony Estrada, Yavapai County Sheriff Scott Mascher, Yuma County Sheriff Leon Wilmot

——————————

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES PELANDER, BOLICK, GOULD, and LOPEZ joined.

JUSTICE TIMMER, opinion of the Court:

¶1        The negligence claimant here recovered damages for dog-bite injuries he received when a law enforcement officer intentionally released a police dog against him.  We today hold that plaintiffs cannot assert a negligence claim based solely on an officer's intentional use of physical force.  The appropriate state-law claim is for battery, and an officer asserting the justification defense set forth in A.R.S. § 13-409 bears the burden of proof on that issue.  Plaintiffs may, however, base a negligence claim on conduct by the officer that is independent of the intentional use of physical force.

¶2        We also hold that at trial on such a battery claim, expert witnesses cannot suggest to the jury that *Graham v. Connor*, 490 U.S. 386 (1989), which sets forth factors pertinent to 42 U.S.C. § 1983 excessive force cases, is the legal standard for deciding the applicability of § 13-409.  Experts may explain their reliance on the factors, as appropriate, but should not imply by mentioning their source that these factors legally control the jury's determination of justification.

## BACKGROUND

¶3        Brian McDonald was driving in Tucson late one evening when he swerved into the opposite lane and nearly collided with a patrol

car driven by Pima County Sheriff's Deputy Matthew Dixon. Activating his siren and flashing lights, Dixon made a U-turn and pursued McDonald. McDonald did not immediately stop, and Dixon called for assistance. Other deputies placed traffic spikes in McDonald's projected path, but he pulled over before hitting them. Dixon stopped and, treating the encounter as high-risk, shouted at McDonald to show his hands and throw out the car keys. Although McDonald's window was down, he did not respond.

¶4 More deputies, including Deputy Joseph Klein and his police dog, Barry, arrived at the scene. Barry was trained to "bite and hold" on command to assist officers in apprehending suspects. Klein assumed command and warned McDonald he would "send [his] dog" unless McDonald started talking. McDonald responded by rolling up his window and driving towards the spikes with the deputies giving chase.

¶5 Pursuing, Klein announced over the police radio that if McDonald "went mobile," after the spikes stopped his car, Klein would deploy Barry. McDonald's car ran over the spikes, hopped a curb, and stopped. McDonald staggered from the car and walked around the back toward the passenger side while leaning on the car for support. Klein got out of his patrol car with Barry and warned McDonald, "stop or you will be bitten." When McDonald reached the passenger-side door, he stopped and put his hands on the roof of the car. According to Klein, he intentionally released Barry the instant before McDonald placed his hands on the top of the car. Barry bit McDonald's leg and held onto it between twenty-five and thirty-eight seconds until Klein ordered the dog to release. McDonald suffered severe injuries.

¶6 Authorities later learned that McDonald had type 1 diabetes and, at the time of the events here, was experiencing a severe hypoglycemic event. As a result, he lacked cognitive function to understand what was happening or respond to police commands. The state did not pursue criminal charges against McDonald.

¶7 McDonald sued Klein and the Pima County Sheriff ("Defendants"), alleging that Klein "negligently released" Barry and that use of the dog "constituted a negligent, unjustified, and excessive use of force." McDonald's claim against the Pima County Sheriff was based solely on vicarious liability. (The trial court granted summary judgment against McDonald on two additional claims, including a claim that the Pima County Sheriff "failed to promulgate appropriate and adequate policies and procedures." That ruling is not at issue here.) McDonald did not assert

3

claims for battery or for deprivation of rights under § 1983. Instead, as related at oral argument before this Court, McDonald deliberately decided to assert only a negligence claim.

¶8　　　Defendants moved for summary judgment, arguing that Klein's intentional use of force could not constitute negligence. The trial court denied the motion two weeks before trial, ruling that McDonald could pursue a claim for "negligent use of force" despite Klein's intentional decision to release Barry against McDonald. The court correctly noted that law enforcement officers can be liable for negligent acts, *see Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 198 ¶ 9 (2001), but did not otherwise explain its ruling.

¶9　　　At trial, the primary issues were whether Klein acted negligently in releasing Barry and, if so, whether he was legally justified in doing so, thereby relieving Defendants of liability pursuant to §§ 13-409, -413. Over Defendants' objection, the court permitted evidence of factors identified in *Graham*, in the Fourth Amendment context, to assess the reasonableness of police force. The court also instructed the jury that Defendants bore the burden of proving that Klein's release of Barry was justified.

¶10　　　The jury found in favor of McDonald and awarded him $617,500 in damages but found him five percent at fault. Defendants unsuccessfully moved for a new trial, asserting that the court improperly instructed the jury on negligence, incorrectly admitted evidence of the *Graham* factors, and incorrectly instructed the jury that Defendants bore the burden of proving justification under § 13-409.

¶11　　　The court of appeals affirmed in a split decision. *Ryan v. Napier*, 243 Ariz. 277 (App. 2017). It declined to "decide whether Arizona law recognizes a separate tort of negligent use of excessive force." *Id.* at 282 ¶ 19 n.6 (internal quotation marks omitted). Instead, the court concluded that McDonald could recover damages under a negligence claim for "Klein's *evaluation of whether* to intentionally release [Barry]," which the court found distinct from a battery claim based on Klein's intentional release of the dog. *Id.* at 282 ¶ 19. The court also determined that the justification defense under §§ 13-409, -413 did not apply to negligence claims, meaning that if Klein negligently released Barry, he was not privileged to do so. *Id.* at 283 ¶ 23. Thus, it did not decide who bears the burden of proving justification in intentional tort cases. *Id.* Finally, the

court rejected Defendants' arguments that evidence of the *Graham* factors was inadmissible.  *Id.* at 284–87 ¶¶ 27–37.

¶12	We granted review to decide whether the trial court and court of appeals properly decided several issues of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.[1]

**DISCUSSION**

### I.  The Negligence Claim
### A.  Review of order denying summary judgment

¶13	Defendants argue that the trial court erred by denying their motion for summary judgment.  They assert that an intentional use of excessive force is an intentional tort (battery) and cannot simultaneously constitute negligence.

¶14	A denial of summary judgment is not an appealable order. *See State v. Superior Court*, 140 Ariz. 365, 366 (1984).  And a denial based on disputed issues of material fact also is not reviewable on appeal from a final judgment after trial.  *Cf. Desert Palm Surgical Grp., PLC v. Petta*, 236 Ariz. 568, 577 ¶ 21 (App. 2015) (reasoning that permitting review "could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because he had failed to prove his case more fully at the time of the hearing of the motion for summary judgment"(quoting *Navajo Freight Lines, Inc. v. Liberty Mut. Ins.*, 12 Ariz. App. 424, 428 (1970))).  But if the denial was grounded on a purely legal issue that affected the final judgment, we can review it like any other interim order.  *See id.* ¶ 22; *see also* A.R.S. § 12-2102(A) (authorizing review of "any intermediate orders involving the merits of the action and necessarily affecting the judgment").

¶15	McDonald does not contest that the trial court's denial of summary judgment was based on a legal issue that necessarily affected the

---

[1] During the pendency of Defendants' appeal, McDonald died from a cause unrelated to his dog-bite injuries.  Although the administrator of his estate has substituted as the petitioner here, we refer to her as "McDonald" for continuity.

final judgment. The efficacy of that ruling is properly before us, and we review it de novo. *See Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015).

## B. Basis for negligence liability

**¶16** Whether Arizona recognizes claims for negligent use of intentionally inflicted force, as the trial court ruled, or negligent evaluation of the need to inflict force, as the court of appeals concluded, turns on the differences between negligence and intentional torts. *Cf. Wells Fargo Bank v. Ariz. Laborers, Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 483 ¶ 19 (2002) ("Negligence . . . claims differ from the intentional tort claims on review here; each has different elements and different requirements of proof.").

**¶17** To recover on a negligence claim, a plaintiff must prove a duty requiring the defendant to conform to a standard of care, breach of that duty, a causal connection between breach and injury, and resulting damages. *See Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64 ¶ 7 (2018). A negligence claim focuses on the defendant's conduct; intent is immaterial. *See* Dan B. Dobbs et al., *The Law of Torts* § 31, at 77 (2d. ed. 2011) [hereinafter Dobbs] ("[T]he emphasis is on risk as it would be perceived by a reasonable person, not on the defendant's purpose or on the certainty required to show intent.").

**¶18** Intentional torts, in contrast, do not require proof of duty, breach, or a causal connection between the breach and the injury. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 314 ¶ 33 (2003); *Wells Fargo Bank*, 201 Ariz. at 483–84 ¶ 20. As the name suggests, these torts are committed by persons acting with tortious "intent." *See Intentional Tort*, Black's Law Dictionary (10th ed. 2014). Acting with "intent" does not refer to the act itself. Restatement (Second) of Torts § 8A cmt. a ("Restatement"); *id.* § 870 cmt. b. It means that "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* § 8A. Thus, as pertinent here, a battery claim requires proof that the defendant intended to cause harmful or offensive contact with the plaintiff. *See Johnson v. Pankratz*, 196 Ariz. 621, 623 ¶ 6 (App. 2000); Restatement § 13.

**¶19** The fundamental distinction between negligence and an intentional tort is whether the consequences of the act or omission are unintentional or intentional. This assessment by the Connecticut Supreme Court captures our view:

It is true, of course, that intentional tortious conduct will ordinarily also involve one aspect of negligent conduct, namely, that it falls below the objective standard established by law for the protection of others against unreasonable risk of harm. That does not mean, however, as the plaintiff's argument suggests, that the same conduct can reasonably be determined to have been both intentionally and negligently tortious. The distinguishing factor between the two is what the negligent actor does *not* have in mind: either the desire to bring about the consequences that follow or the substantial certainty that they will occur. If he acted without either that desire or that certainty, he was negligent; if he acted with either that desire or that certainty, he acted intentionally.

*Am. Nat'l Fire Ins. v. Schuss*, 607 A.2d 418, 423 (Conn. 1992).

¶20 Based on the foregoing, we conclude that negligence and intent are mutually exclusive grounds for liability. *Cf. Transamerica Ins. v. Meere*, 143 Ariz. 351, 357 (1984) (differentiating negligence from intent and noting that "the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent . . . [and] is not classed as an intentional wrong" (quoting William Lloyd Prosser, *Handbook on the Law of Torts* § 8, at 32 (4th ed. 1971))); *see also Am. Nat'l Fire Ins.*, 607 A.2d at 422 ("It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree are separate and mutually exclusive." (citation omitted)); Dobbs, *supra* ¶ 17, § 31 ("Any given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability."); Restatement § 282 cmt. d ("[Negligence] excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or of a third person."). It follows that if a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence.

¶21 We therefore disagree with the trial court that negligent use of intentionally inflicted force is a cognizable claim. *See* Dobbs, *supra* ¶ 17, § 31 ("As the saying goes, there is no such thing as a negligent battery."); *see also Duncan*, 205 Ariz. at 314 ¶ 32 (noting "battery and negligence

(malpractice) constitute separate causes of action, each protecting different interests" (citation and internal quotation marks omitted)).[2]

¶22 We also disagree with the court of appeals and McDonald that negligence liability can result from a law enforcement officer's "evaluation" of whether to intentionally use force against another person. A negligence claim requires either "an act" or a failure to "act." *See* Restatement § 284; *see also Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984) (citing Restatement § 284 with approval). An "act" is "an external manifestation of the actor's will." Restatement § 2. An actor's internal evaluation about whether to use force and the decision to do so are not "acts" and therefore cannot, by

---

[2] Other courts are in accord with our view. *See, e.g., Mooney v. Carter*, 160 P.2d 390, 393 (Colo. 1945) (stating that plaintiff's injuries from being thrown from a running board could not stem from negligence when the defendant intentionally applied force to her car to throw the plaintiff off); *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 1996) ("[A] suit for a police officer's use of excessive force necessarily involves the intentional tort of battery."); *Baska v. Scherzer*, 156 P.3d 617, 628 (Kan. 2007) (holding that the doctrine of transferred intent applied and plaintiffs could not style their claim as negligence where defendant intended to punch a third party but instead punched plaintiff); *Schumann v. McGinn*, 240 N.W.2d 525, 529–30 (Minn. 1976) (stating that the excessive use of force by a law enforcement officer is an intentional battery and distinguishing negligence); *Howard v. Wilson*, 62 So. 3d 955, 957 ¶ 9 (Miss. 2011) ("[T]here is no such thing as a 'negligent battery.'" (citation omitted)); *Love v. City of Port Clinton*, 524 N.E.2d 166, 168 (Ohio 1988) ("Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence."); *Denton v. Arnstein*, 250 P.2d 407, 415 (Or. 1952) ("An assault and battery is not negligence."); *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014) (refusing to recognize a claim for negligence where officer injured Plaintiff while handcuffing him because "[c]laims of excessive force . . . arise out of a battery rather than negligence, whether the excessive force was intended or not"). *But see Merman v. City of Camden*, 824 F. Supp. 2d 581, 598 (D.N.J. 2010) (refusing to dismiss a claim for negligent infliction of bodily harm caused by officers grabbing plaintiff and throwing her to the ground as "a jury would be free to accept[] that any injuries suffered by plaintiff were caused by the officers' negligent use of force"); *City of Birmingham v. Thompson*, 404 So. 2d 589, 590 (Ala. 1981) (agreeing that "officer using excessive force against a prisoner [] committed a negligent tort").

themselves, constitute negligence. Here, Klein's "act," and the sole cause of McDonald's injuries, was Klein's intentional release of Barry to bite and hold McDonald. *Cf. id.* cmt. c ("Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger."). As previously explained, an intentional act cannot also constitute negligence. *See supra* ¶¶ 19–20. In short, Klein's internal evaluation of whether to release Barry and his decision to do so was part and parcel of his intent to inflict harmful or offensive contact on McDonald. *Cf. Latits v. Phillips*, 826 N.W.2d 190, 196 (Mich. Ct. App. 2012) ("[T]he claim that defendant failed to appreciate that [plaintiff] did not pose a risk of harm may have some bearing on whether defendant made the proper decision to shoot, but it does not alter the fact that it was an intentional decision to shoot.").

¶23 We are further persuaded because permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to "plead around" statutory provisions that apply only to intentional tort claims.

¶24 First, a public entity, like the Pima County Sheriff's Office, is immune from liability for damages caused by an employee's felony act unless the entity knew of the employee's propensity to commit such acts. *See* A.R.S. § 12-820.05(B); *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254, 257 ¶ 10 (App. 2015). Similarly, the public entity is not required in that circumstance to indemnify the employee for any liability imposed. *See* A.R.S. § 41-621(L). Thus, if Klein's intentional release of Barry on McDonald was unjustified and consequently determined to be aggravated assault, *see* A.R.S. §§ 13-1203(A), -1204(A), the Sheriff would be immune from liability, unless he knew that Klein had a propensity to act as he did, and would not be required to indemnify Klein. *Cf. State v. Heinze*, 196 Ariz. 126, 130 ¶ 18 (App. 1999) (interpreting § 41-621(L), which has language similar to § 12-820.05(B), and concluding that a felony conviction is not a prerequisite to the application of the felony exclusion).

¶25 Second, statutory presumptions are triggered when a law enforcement officer intentionally uses physical force to arrest or capture a suspect and the suspect is injured. The officer is "presumed to [have been] acting reasonably" in using physical force. A.R.S. § 12-716(A)(1). And the officer's employer is "presumed to have reasonably hired and trained" its officers to use that physical force. *Id.* § 12-716(A)(2).

¶26 A negligence action based on Klein's evaluation of the need for force avoided these provisions. But the applicability of legislatively

mandated immunity, insurance, and evidentiary presumption provisions should not depend on clever pleading. *See Latits*, 826 N.W.2d at 197 (stating that "plaintiff cannot avoid the protections of immunity by 'artful pleading'" and concluding that the applicability of immunity provision should turn on the gravamen of a claim); *Britton v. City of Crawford*, 803 N.W.2d 508, 518 (Neb. 2011) (concluding that immunity provision for battery applied as "[n]o semantic recasting of events can alter the fact that the shooting was the immediate cause of [suspect's] death" and "[e]ven if it is possible that negligence was a contributing factor . . . the alleged negligence was inextricably linked to a battery").

¶27        The two Arizona cases relied on by McDonald and the court of appeals do not persuade us to reach a different conclusion. *See Ryan*, 243 Ariz. at 281 ¶ 14.  Although each case involved claims for a law enforcement officer's negligent use of force, the viability of those claims was not at issue. *See Weekly v. City of Mesa*, 181 Ariz. 159, 161 n.2 (App. 1994) ("Plaintiff also alleged negligent use of excessive force [and three other claims].  No issues regarding any of these other claims are before us on appeal."); *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 397 (App. 1990) (listing issues on appeal, which do not include the viability of a claim for negligent use of excessive force).

¶28        Similarly, the viability of a negligence claim based on an officer's use of force was not directly at issue in other-jurisdiction cases cited by McDonald. *See Fuciarelli v. Good*, No. CV-14-01078-PHX-GMS, 2016 WL 4529822, at *3–4 (D. Ariz. Aug. 30, 2016) (rejecting arguments that police are immune from negligence claims under Arizona law and can only be held liable for gross negligence); *Bryson v. Oklahoma County*, 261 P.3d 627, 631–33 ¶¶ 8–12 (Okla. App. 2011) (granting summary judgment to County on respondeat superior claim for detention officer's assault, battery, and negligence because County was not the deputy's employer).

¶29        We are likewise unpersuaded by cases cited by the court of appeals and McDonald permitting a negligence claim to rest on a law enforcement officer's evaluation of whether to intentionally use excessive force.  Two of these cases involved discrete acts of negligent conduct preceding the use of force. *See Reed v. District of Columbia*, 474 F. Supp. 2d 163, 174 (D.D.C. 2007) ("So here, a distinct act of negligence, a misperception of fact, may have played a part in the decision to fire." (citation and internal quotation marks omitted)); *Hernandez v. City of Pomona*, 51 Cal. Rptr. 3d 846, 859–60 (Ct. App. 2006) (concluding that a wrongful death complaint for shooting a fleeing suspect was sufficient to

plead negligence based on officers' pre-shooting conduct that created the situation justifying use of excessive force), *rev'd*, 207 P.3d 506, 521 (Cal. 2009) ("[O]n the conceded facts here, we find no basis for a preshooting negligence claim."). The only conduct underlying the negligence claim here was Klein's intentional release of Barry against McDonald. Thus, regardless of whether Arizona would recognize negligence claims like the ones in *Reed* and *Hernandez*, these cases are inapposite. *Cf. District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003) ("[I]f, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care.").

¶30 McDonald also relies on a case from the California Court of Appeal, which concluded that an officer's lack of due care in deciding to use deadly force "can give rise to negligence liability for the intentional shooting death of a suspect." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009) (citation and internal quotation marks omitted). For the reasons already explained, we disagree with *Ransweiler*.

¶31 To be clear, plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory. For example, if the evidence here also supported a finding that Klein unintentionally dropped Barry's leash, resulting in the attack against McDonald, a negligence claim would have been appropriate. *See Chinn*, 839 A.2d at 710–11 (acknowledging that negligence and battery claims are appropriately pled when the evidence supports "alternate scenarios" supporting each distinct theory). It is the jury's role (or the judge's in a bench trial) to establish what occurred and then apply the correct legal theory to arrive at a verdict.

¶32 In sum, the trial court and court of appeals erred by deciding that Defendants could be liable in negligence for Klein's intentional release of Barry to bite and hold McDonald. The only claim supported by the facts here is an intentional battery, which McDonald deliberately neither pled nor tried to the jury. We reverse the trial court's judgment and remand for entry of judgment in favor of Defendants on the negligence claim but without prejudice to the filing of any appropriate and permissible post-judgment motions.

¶33          Because the parties and amici have fully argued the remaining, recurring issues, we address them to provide guidance.

## II.  A.R.S. § 13-409

¶34          Section 13-409 provides a justification defense for law enforcement officers who use physical force:

> A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:
>
> 1.  A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
>
> 2.  Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained.
>
> 3.  A reasonable person would believe the arrest or detention to be lawful.

If the officer's use of force is justified under § 13-409, the officer is immune from civil liability.  *See* A.R.S. § 13-413.  Importantly, although the use of force can be justified at its commencement, it loses legal justification at the point the force becomes unnecessary.  *See id.* § 13-409(1); *Chinn*, 839 A.2d at 711 (acknowledging that officers lose the privilege to use physical force when it "crosse[s] the line of permissible force").  For example, here, Klein's release of Barry on McDonald may have been justified at its inception but leaving Barry "on bite" for a prolonged period could have been an unjustified battery.  *Cf. Chinn*, 839 A.2d at 711 (stating that a battery does not "transmogrify into negligence" if officers mistakenly use excessive force but the battery instead becomes unprivileged).

### A. Application in negligence cases

¶35        Defendants argue that even if the court of appeals was correct that negligence liability can properly rest on an officer's evaluation of whether to use physical force, it wrongly concluded that §§ 13-409, -413 cannot apply to immunize the officer from liability. Our resolution of the first issue moots much of this argument. We address whether the justification defense applies in negligence cases, however, because the issue has been fully briefed and may recur.

¶36        Civil liability cannot be imposed on a law enforcement officer for "engaging in [justified] conduct," regardless of the theory of recovery. A.R.S. § 13-413. Nonetheless, as a practical matter, the § 13-409 justification defense is either redundant or immaterial, and therefore inapplicable, in negligence actions brought against law enforcement officers. If the claim is based on the officer's negligent use of force, whether he acted reasonably — an inquiry common to both negligence and the justification defense — forms part of the plaintiff's burden to prove negligence. *See* § 13-409(1) (listing as a requirement for justification whether a reasonable person would have believed that force was immediately necessary to arrest or detain a suspect); *Stanley v. McCarver*, 208 Ariz. 219, 224 ¶ 16 (2004) (stating that in negligence cases, "the duty is always the same[:] to conform to the legal standard of reasonable conduct in the light of the apparent risk" (citation and internal quotation marks omitted)). The jury has no reason to again consider reasonableness in the context of the justification defense, and it could be confused if asked to do so. If the claim is based on a negligent act preceding an intentional use of force, the justification defense would be immaterial. *See* § 13-409 (authorizing the justification defense only for acts of "threatening or using physical force against another").

¶37        The inapplicability of the justification defense in negligence actions is demonstrated by considering hypothetical scenarios drawn from this case. If McDonald had asserted negligence based on evidence that Klein unintentionally dropped Barry's leash, and the jury found this occurred, it then would have found that Klein either did or did not act reasonably. If the former, the negligence claim would fail without the need to consider the justification defense. If the latter, Klein's unreasonable conduct could not have been justified. In other words, the jury's determination that Klein acted unreasonably would preclude a finding under § 13-409 that his conduct met that statute's reasonableness requirements and was therefore justified. Similarly, had McDonald asserted that Klein was negligent in a distinct act preceding his intentional

release of Barry, such as failing to properly train the dog on when to release the bite, the justification defense would not excuse this conduct. In that scenario, the negligent act was Klein's training and not the use of force, so § 13-409 would not apply.

¶38 Based on the foregoing, a trial court should not instruct a jury on the justification defense under § 13-409 if the only claim against the law enforcement officer is negligence. If a claim is also made for battery, the court should instruct on the justification defense but explain that the defense applies only to the battery claim to avoid juror confusion.

### B. Burden of proof

¶39 Neither §§ 13-409 nor 13-413 specifies who bears the burden of proving justification in civil cases. This Court has long held that defendants in civil cases bear the burden of proving any affirmative defense. *See, e.g., Glazer*, 237 Ariz. at 164 ¶ 13; *Yeazell v. Copins*, 98 Ariz. 109, 116 (1965); *Harvey v. Aubrey*, 53 Ariz. 210, 214 (1939). Conversely, before 2006, the state had the burden of proving the absence of justification beyond a reasonable doubt in criminal cases. *See State v. Hunter*, 142 Ariz. 88, 89 (1984) (stating that when a defendant presents evidence of self-defense the state must prove beyond a reasonable doubt that the conduct was not justified); *Pfeil v. Smith*, 183 Ariz. 63, 65 (App. 1995) (to same effect). Consistent with this authority, the court of appeals, before 2006, required defendants to prove justification defenses in civil cases by a preponderance of the evidence. *See, e.g., Pfeil*, 183 Ariz. at 65; *Weekly*, 181 Ariz. at 166 n.5.

¶40 In 2006, the legislature amended § 13-205(A) as follows (the modified language is shown with strikeouts and italics):

> A. Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence, including any justification defense under chapter 4 of this title. *Justification defenses under chapter 4 of this title are not affirmative defenses. Justification defenses describe conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct. If evidence of justification pursuant to chapter 4 of this title is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification.*

*See also* A.R.S. § 13-205 historical and statutory notes. Defendants argue that the amendments to § 13-205(A) require plaintiffs in civil actions to prove the absence of justification by a preponderance of the evidence.

¶41 We interpret § 13-205 de novo. *See Glazer*, 237 Ariz. at 163 ¶ 12. Our goal is to effectuate the legislature's intent. *Id.* If § 13-205 has only one reasonable interpretation, we will apply that interpretation without further analysis. *Id.* If the statute is subject to more than one reasonable interpretation, however, we will resolve that ambiguity by examining other factors like "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Id.* (citation and internal quotation marks omitted).

¶42 Section 13-205 is ambiguous because it has two reasonable interpretations. The statute provides that a defendant must prove any affirmative defense by a preponderance of the evidence, but then excludes justification defenses from the category of affirmative defenses. *See also* A.R.S. § 13-103(B) ("Affirmative defense does not include any justification defense."). This language supports Defendants' view that the legislature intended to displace the common law principle that justification defenses are affirmative defenses, which defendants bear the burden of proving in civil cases. In contrast, the last sentence of § 13-205 explicitly places the burden of proving justification in criminal cases on the state but is silent on who bears the burden in civil cases. This language supports McDonald's view that the legislature did not intend to upend the common law regarding the burden of proof in civil cases.

¶43 We agree with McDonald that § 13-205 did not change the common law precept that defendants bear the burden of proving justification in civil cases. First, nothing in the language of § 13-205 or its legislative history suggests that the legislature intended to place the burden on plaintiffs in civil cases to disprove justification. The statute was amended by passage of Senate Bill 1145, which added several provisions to our criminal code pertaining to affirmative defenses and justification defenses. *See* 2006 Ariz. Sess. Laws, ch. 199 (2d Reg. Sess.). The primary focus of SB 1145 was the addition of laws concerning self-defense and home protection. *See* Ariz. State Sen. Fact Sheet for S.B. 1145, 47th Leg., 2d Reg. Sess. (June 27, 2006). It also codified the common law principle that if a defendant presents some evidence of justification in a criminal case, the state bears the burden of proving a lack of justification. But there was no mention of civil liability in Senate Bill 1145 or in its legislative history. We

expect that the legislature would have been explicit if it intended to change the common law view that defendants bear the burden of proving justification defenses in civil cases. *Cf. Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 489 ¶ 22 (App. 2015) ("The legislature's specification, in § 13-205, of what 'the state' must prove, and the location of the statute in chapter 2 of the criminal code, titled 'General Principles of Criminal Liability,' belie any suggestion that the legislature intended to shift or alter the burden of proof when a parent argues, in a dependency proceeding, that physical discipline of a child was reasonable and justified.").

¶44 Second, the exclusion of justification defenses from the category of "affirmative defenses" applies only to criminal cases. "Affirmative defenses" are defined in the criminal code as statutory defenses "that attempt[] to excuse the criminal actions of the accused." A.R.S. § 13-103(A), (B). Removing justification defenses from that definition in criminal cases does not impact the common law treatment of justification defenses in civil cases as affirmative defenses.

¶45 Third, as pertinent here, placing the burden on law enforcement officers in civil cases to prove the § 13-409 justification defense aligns with the burden placed on them to prove non-statutory justification defenses. *See, e.g.*, *Whitlock v. Boyer*, 77 Ariz. 334, 338 (1954) (concluding in a civil false arrest case that police chief had the burden to prove by a preponderance of the evidence that he had reasonable grounds to believe plaintiffs had committed a felony).

¶46 In sum, a defendant bears the burden of proving a justification defense by a preponderance of the evidence in a civil case. To do so, the defendant may use any applicable presumption set forth in § 12-716, which sets forth presumptions concerning crime victims and law enforcement officers. If a presumption applies, the burden shifts to the plaintiff to produce evidence to rebut the presumption, although the defendant retains the burden of persuasion. *See* Ariz. R. Evid. 301.

## III.  The *Graham* Factors

¶47 The United States Supreme Court in *Graham* concluded that § 1983 claims for excessive use of force by law enforcement officers should be analyzed under the Fourth Amendment's "reasonableness" standard. 490 U.S. at 395. It explained that the standard's "proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect

poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight" (the "*Graham* factors"). *Id.* at 396.

¶48 Over Defendants' objection, McDonald's police tactics expert explained the *Graham* factors to the jury; noted they are based on a United States Supreme Court case; stated they are accepted "nationwide" in the law enforcement community as the standard for reasonableness and that Klein was trained on them; and opined that under the *Graham* factors, Klein did not act reasonably by releasing Barry on McDonald. Defendants' expert also testified about the *Graham* factors in expressing an opposing opinion. In doing so, he provided the "legal principles" from *Graham*; related it is "one of the core cases" used to teach law enforcement officers about the "objective reasonableness standard"; and opined that Klein's use of Barry was appropriate under the *Graham* factors.

¶49 Defendants argue that the trial court violated Arizona Rules of Evidence 702(a) and 704(a) by allowing McDonald's expert to effectively tell the jury it should assess "reasonableness" under § 13-409 by applying the *Graham* factors and then opining that Klein violated that standard. They contend that the expert usurped both the court's role to instruct the jury on the law and the jury's role to decide the case.

¶50 Rule 702(a) permits expert testimony if "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Defendants do not contest that expert testimony concerning police training and tactics was appropriate here.

¶51 We agree with the court of appeals dissent that an expert oversteps by testifying that *Graham* governs application of the justification defense. *See Ryan*, 243 Ariz. at 291–92 ¶¶ 60–63 (Espinosa, J., dissenting). It is the trial court's role, not the expert's, to instruct the jury on the applicable legal standards. *See* Ariz. Const. art. VI, § 27 (providing that "[j]udges . . . shall declare the law" to juries); *see also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."). Thus, McDonald's expert's testimony that "*Graham v. Connor* and the factors therein" set forth the standard for reasonableness "[r]egardless of the claim that's made" was inappropriate. Trial courts should not permit experts to state or suggest that *Graham* governs application of the justification defense under § 13-409. *See People v. Brown*, 245 Cal. App. 4th 140, 168 (2016) (stating expert "improperly

17

stepped outside his role as adjunct to the fact finder" by summarizing his understanding of *Graham* to the jury).

¶52 The impropriety of an expert informing the jury about the proper legal standard in the case does not prevent him from mentioning the *Graham* factors. If an expert reasonably relied on the factors in forming an opinion, he may explain them to the jury. *See* Ariz. R. Evid. 703; *id.* cmt. to the original 1977 Rule. But the expert generally should refrain from referring to *Graham*, or at least refrain from explaining that the "*Graham* factors" originate from a United States Supreme Court decision, as doing so might needlessly risk confusing jurors about the legal standard to apply and unduly elevate the expert's opinion. *See* Ariz. R. Evid. 403. For example, McDonald's expert could have described the *Graham* factors, without referring to the Supreme Court, and then testified that law enforcement officers typically consider them when deciding whether to release a dog.

¶53 Lastly, although Defendants argue that McDonald's expert improperly told the jury how to decide the case, they did not develop this argument beyond asserting that the expert improperly invoked *Graham*. Whether an expert, like both experts here, can properly opine on whether an officer was "justified" or "reasonable" in his conduct was not raised before the trial court and not developed here. *See* Ariz. R. Evid. 704(a), cmt. to original 1977 Rule ("An opinion is not objectionable just because it embraces an ultimate issue" but "[s]ome opinions on ultimate issues will be rejected as failing to meet the requirement that they assist the trier of fact."). We leave that issue for another day.

¶54 In sum, experts may not suggest that *Graham* is the legal standard for jurors to decide whether a law enforcement officer's conduct was justified under § 13-409. Experts may recount their reasonable reliance on these factors in forming opinions and inform jurors that officers are trained on them. But experts should refrain from suggesting that the *Graham* factors are legally required.

## CONCLUSION

¶55 We vacate the court of appeals' opinion. We reverse the trial court's judgment and remand to that court for entry of judgment in favor of Defendants on the negligence claim. The parties may file any appropriate and permissible post-judgment motions.