**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| JEANINE LIBERTI; MICHAEL LIBERTI, individually and as surviving parents of Dylan Liberti, decedent, | No. 18-16938 |
| Plaintiffs-Appellants, | D.C. No. 2:17-cv-02813-DLR |
| v. | MEMORANDUM* |
| CITY OF SCOTTSDALE, et al., | |
| Defendants-Appellees, | |
| and | |
| DOES, named as John and/or Jane Does I through V, fictitious individuals; ABC Corporations and/or Partnerships and/or Sole Proprietorships and/or Joint Ventures I-X, fictitious entities, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted March 5, 2020
Phoenix, Arizona

Before: HAWKINS, OWENS, and BENNETT, Circuit Judges.

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs Jeanine Liberti and Michael Liberti appeal from the district court's grant of summary judgment to Defendants. Plaintiffs' claims arise out of the interaction between Officer Wilmer Fernandez-Kafati, Officer Marjorie Bailey, and Dylan Liberti ("Liberti"), which tragically ended in the fatal shooting of Liberti. The district court granted summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim based on qualified immunity, and granted summary judgment on Plaintiffs' negligence and wrongful death claims after finding Plaintiffs' counsel had conceded that the state law counts rose or fell with their § 1983 claim.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court correctly found that qualified immunity barred Plaintiffs' claim that the officers violated Liberti's Fourth Amendment rights by using excessive and deadly force against him. Qualified immunity's availability depends upon (1) whether the facts "taken in the light most favorable to the party asserting the injury show[s] that the officers' conduct violated a constitutional right and (2) [whether] the right was clearly established at the time of the alleged violation." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (internal quotation marks and alterations omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). We need only address the second prong.

---

[1] The district court overread counsel's "concession." However, we nonetheless affirm the district court's grant of summary judgment on the state law claims for the reasons stated below.

Even if we agree that the officers violated one of Liberti's constitutional rights, Supreme Court precedent prevents us from considering it a "clearly established right." An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable [officer] in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks and citation omitted). The Supreme Court has explicitly warned against defining "clearly established law at a high level of generality." *Id.* at 1152 (internal quotation marks and citations omitted).

No existing precedent would have given the officers notice that Officer Bailey's grabbing of Liberti's elbow in an attempt to get him to sit down or that the officers' additional attempts to subdue him when he fled were unconstitutional. These uses of force fall "far from an obvious case in which any competent officer would have known [their uses of force] . . . would violate the Fourth Amendment." *Id.* at 1153. Likewise, there is no case that would establish that Officer Fernandez-Kafati's use of deadly force was obviously unconstitutional where: (1) Liberti had already fled from the officers and was not complying with their orders; (2) Liberti had a knife in his hand; (3) Officer Bailey's prior use of a Taser to subdue Liberti had proven ineffective; (4) Liberti was moving toward either Officer Fernandez-Kafati or the shopping center with a knife in hand; and (5) Officer Fernandez-Kafati

was the only officer standing between Liberti and the rest of the open-air shopping center where members of the public were present. This keeps us from finding that the officers had "fair and clear warning" that their actions were unconstitutional. *Id.* (citation omitted).

2. We are similarly constrained by Arizona law with respect to Plaintiffs' state law claims based on officer negligence. In Arizona, plaintiffs cannot base a negligence claim on an intentional use of force nor on a law enforcement officer's negligent "'evaluation' of whether to intentionally use force." *Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018). Any negligence claim must be based on conduct independent of the intentional use of force. *Id.* at 238.

3. Plaintiffs' remaining claims fail as there are no wrongful acts for which the officers can be liable. No reasonable juror could find that the initial use of force was wrongful, given the information known to the officers. They were responding to a hang-up 911 call; they had been told that the man making the call did not look well; and a bystander had flagged down Officer Fernandez-Kafati to point out Liberti. In addition, when they wanted to reasonably limit Liberti's movements while they were talking to him, giving Liberti many verbal commands and requests to sit down, Liberti refused. The officers were faced with a difficult situation: they did not know exactly why Liberti was behaving the way he was but wanted to continue the conversation while maintaining control and limiting Liberti's options to escalate the

4

situation. Their actions were modest and tailored to the situation, and no reasonable juror could have found them wrongful. When Liberti subsequently attempted to run away, no reasonable juror could find that the officers' increased use of force to attempt to subdue him was wrongful. Furthermore, once Liberti had his knife in hand, he clearly posed a danger to himself and others. No reasonable juror could find that the officers' escalating attempts to subdue him, up to and including Officer Fernandez-Kafati's use of deadly force, constituted wrongful acts.

**AFFIRMED.**

*Liberti v. City of Scottsdale*, No. 18-16938

BENNETT, Circuit Judge, concurring in part and dissenting in part:

Dylan Liberti died tragically on a hot summer Arizona day in July 2016, shot by police officers in a Scottsdale shopping mall. Dylan was just twenty-four when he died. Many of the salient events of that tragic day are captured on police video. Police officers approached Dylan, primarily because he had made a hang-up 911 call from a nearby restaurant and a passer-by thought Dylan was acting erratic and "looked weird." The restaurant manager gave no indication that Dylan posed any danger and neither did the passer-by. Though it likely exceeded 100 degrees at the time the police approached Dylan, they were intent and insistent on physically forcing Dylan to sit down on hot concrete. The video demonstrates that Dylan answered their questions cogently and lucidly, though because of their errors in processing what Dylan said, they may have believed Dylan was not being as cooperative as the video shows him to be. Dylan became obviously agitated (but still not threatening) as they became more and more insistent that he sit down. One officer then physically grabbed Dylan's arm to force him to the ground. The tragic aftermath is accurately described by the majority.

Dylan's parents, the Plaintiffs, brought this case. Though I agree with the majority that the Defendants are entitled to summary judgment on Plaintiffs' federal claims and state law negligence claims, I respectfully dissent from the

majority's affirmance of the district court's grant of summary judgment on Plaintiffs' wrongful death claims. I believe the evidence, when viewed in the light most favorable to Plaintiffs, would allow a reasonable jury to find that the officers committed a battery and false arrest, both wrongful acts under Arizona's wrongful death statute, and that either or both proximately caused Dylan's death. I would therefore reverse the district court's grant of summary judgment on the wrongful death claims and remand those claims for further proceedings.[1]

Arizona's wrongful death statute provides that "when the death of a person is caused by wrongful act, neglect or default, [the actor] who would have been liable if death had not ensued shall be liable to an action for damages." *Walsh v. Advanced Cardiac Specialists Chartered*, 273 P.3d 645, 648 (Ariz. 2012) (internal alterations omitted) (quoting A.R.S. § 12-611).

The events that eventually led to Dylan's death started out as a welfare check in response to a hang-up 911 call. Officers Fernandez-Kafati and Bailey knew that a male who had used a phone in a restaurant to make the call had subsequently left the restaurant without incident. The officers were told that the male did not look well, but there was no report that he posed a danger to anyone, or even that he looked like he might pose a danger to anyone. Officer Fernandez-

---

[1] I would not simply remand for trial, as I believe Defendants should be given the opportunity to try to show that Plaintiffs' wrongful death claims are barred, as a matter of law, by state law defenses, such as state law qualified immunity.

2

Kafati was directed toward Dylan by a shopper who thought that Dylan "looked weird" and "didn't look right." Officer Bailey arrived shortly thereafter with her on-body camera actively recording. The on-body camera video shows that the officers spoke to Dylan in front of a grocery store, asking him for identifying information and whether he wanted them to call paramedics because he did not look well. Dylan answers the officers' questions cogently and accurately but declines additional assistance. For example, Dylan accurately provided the officers his name, date of birth, and home address. Dylan does not appear irrational, dangerous, in obvious need of assistance, or obviously intoxicated.[2] Dylan is not acting in a threatening manner—either to the officers or anyone else. The officers are in possession of no evidence that Dylan committed a crime. The officers repeatedly ask (and then demand) that Dylan sit down. As Plaintiffs note, it was a hot day and the concrete the officers wanted Dylan to sit on was possibly painfully hot. Historic records show that the temperature in Scottsdale was as high

---

[2] The district court's conclusions that Dylan's failure to follow the officers' directions constituted an ignoring of "questions and commands," appears to disregard that Dylan answered the officers' questions regarding his identifying information and clarified when asked to do so. Though the video speaks for itself; to the extent the video is ambiguous on these points, of course we must construe the facts in the light most favorable to Plaintiffs. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011). In its finding that the officers acted reasonably in response to "Liberti's jittery, confused demeanor, [and] complaints of feeling ill," the district court substituted its own reasoning for that of the factfinder and improperly resolved a question of fact against the non-moving party on summary judgment.

as 111 degrees the day Dylan was shot.[3]  Dylan obviously does not want to sit, but continues to answer the officers' questions, while not following their commands to sit.

After approximately six minutes of discussion, Officer Bailey grabs Dylan's elbow to get him to sit down because Dylan was "moving around too much" for her.  Again, there is nothing in the video that demonstrates (and certainly not in the light most favorable to Plaintiffs) that Dylan's "moving around" is dangerous, evidence of a crime, or another reason for the officers to arrest him.  Dylan pulls away from Officer Bailey's grasp and attempts to run away.  The officers attempt to subdue Dylan but he pulls free and runs into the open-air shopping area.  The officers give chase and find Dylan with a small knife.  The officers order him to drop the weapon, but he resumes running away from the officers.  When they catch up to him a second time, Officer Bailey deploys her Taser, but it does not incapacitate Dylan.  He gets up and begins to run.  Officer Fernandez-Kafati then fatally shoots Dylan.

Viewing the facts in the light most favorable to Plaintiffs, the chase, tasering, and shooting might not have occurred at all had Officer Bailey not grabbed Dylan and tried to force him to sit down against his wishes.  Put another

---

[3] *See* Record of Climatological Observations at Scottsdale Municipal Airport, AZ—July 27, 2016, NOAA, https://www.ncdc.noaa.gov/cdo-web/search.

way, a reasonable trier of fact could find that that initial use of force was the proximate cause of all that followed. Thus, under Arizona's wrongful death statute, if that use of force (and the actions surrounding it) was a "wrongful act, neglect or default," then Plaintiffs could make out a case for wrongful death.

The videotape simply does not resolve all questions of material fact. A reasonable factfinder could, for example, find that Officer Bailey's initial use of force to grab Dylan's shoulder to force him to sit down on painfully hot concrete, could constitute false arrest or battery which proximately caused the chase, tasering, shooting, and death. The video shows Dylan politely, cogently, and fully answering the officers' questions. Sadly, it appears from the video that part of the officers' unease was caused because they perhaps felt that Dylan gave them a false name (like they thought he was somehow making up a name—like "Liberty"). Also, Officer Bailey called in Dylan's date of birth incorrectly, possibly adding to her unease when the information does not appear to turn up anything.

Dylan only attempts to flee when Officer Bailey grabs him in order to force him to do something he clearly does not want to do—sit down on hot concrete. Construing the facts in the light most favorable to Plaintiffs, there is a question of fact as to whether Officer Bailey had probable cause to believe that Dylan had committed an offense when she grabbed him. *See State v. Keener*, 75 P.3d 119, 122 (Ariz. Ct. App. 2003) (defining probable cause as "reasonably trustworthy

5

information and circumstances that would lead a person . . . to believe that a suspect has committed an offense" (internal quotation marks, alterations, and citation omitted)). Without probable cause, a jury could find that Officer Bailey had no legal authority to effect a detention of Dylan, therefore falsely arresting him. *See Torrez v. Knowlton*, 73 P.3d 1285, 1287 (Ariz. Ct. App. 2003) ("[T]he tort of false arrest occurs when a person is unlawfully detained without consent.").[4]

The facts surrounding Officer Bailey's use of force, construed in the light most favorable to Plaintiffs, may also support a battery claim. *See Ryan v. Napier*, 425 P.3d 230, 238 (Ariz. 2018) (acknowledging that the facts pled for a police officer's intentional use of force supported an intentional battery claim). Battery is a wrongful act, and on the record before us, a reasonable jury could find such a battery proximately caused Dylan's death. For these reasons, Officer Bailey's use of force could constitute a wrongful act that ultimately led to and proximately caused Dylan's death. That the officers are entitled to qualified immunity for Plaintiffs' constitutional claims does not bear on this question.

---

[4] While a jury could find that Officer Bailey's use of force was reasonably used in the exercise of her community care role or that it was merely detention pursuant to reasonable suspicion, the evidence simply does not compel this conclusion. Similarly, while the jury might find that the officers were justified in using force because Dylan's actions violated certain Arizona state laws and city ordinances, as argued by Defendants on appeal, the evidence similarly does not compel such a conclusion, and certainly not when viewed in the light most favorable to Plaintiffs.

6

A reasonable jury could find that Dylan should not have died that hot Arizona summer day. And that jury could find that the proximate cause of Dylan's death were wrongful acts under Arizona law. As I believe that Dylan's parents, the Plaintiffs here, should have the opportunity to further proceed with their wrongful death claims, I respectfully dissent from that portion of the majority's disposition upholding summary judgment in favor of Defendants on those claims.