**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA ADAME, Surviving mother of decedent, personal representative of estate of Derek Adame, deceased; CLARISA ABARCA, As parent of minor child, surviving daughter of decedent Derek Adame, on behalf of C.A., | No. 21-16031<br><br>D.C. No. 2:17-cv-03200-GMS |
| *Plaintiffs-Appellees*, | |
| v. | |
| CITY OF SURPRISE, | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF ARIZONA |
| *Defendant-Appellant*, | |
| and | |
| SURPRISE POLICE DEPARTMENT; JOSEPH GRUVER, Officer; SHAUN MCGONIGLE, Officer, | |
| *Defendants*. | |

Filed June 14, 2022

Before: Mary H. Murguia, Chief Judge, and Susan P. Graber and Carlos T. Bea, Circuit Judges.

Order

# SUMMARY[*]

## Civil Rights/Arizona Law

The panel certified to the Supreme Court of Arizona the following questions:

1.  Does A.R.S. Section 12-820.05(B) provide immunity from liability?  If the latter, the Court need not answer any further questions because our court would lack jurisdiction over this interlocutory appeal.  If the former, please answer the following additional questions.

2.  With respect to the first sentence of subsection (B) of this statute:  If a law enforcement officer causes a death by the use of "excessive force" (here, a firearm), has the law enforcement officer committed "a criminal felony" as a matter of law?  If not, is a conviction of a felony required?   If not, is the determination whether the law enforcement officer committed "a criminal felony" a question of fact for the jury or a question of fact only for "the court"?  How does the determination whether an officer's use of "excessive force" was "justified" or "unjustified" pursuant to A.R.S. section 13-413 affect this inquiry?  Is the determination of whether the public employee's relevant acts or omissions were "justified" or "unjustified" for the jury to make, or for the court to make?  If this determination is for the court to make, for purposes of summary judgment, in

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

applying A.R.S. section 12-820.05(B), is the reviewing court required to assume that the relevant acts or omissions of the public employee were "unjustified," given A.R.S. section 13-413?

3.  With respect to the second sentence of subsection (B) of this statute:  Does this sentence apply only to a public employee's operation or use of a motor vehicle?  Or, if the public employee's act takes place because another person operates or uses a motor vehicle (where, for example, a law enforcement officer fires because someone else is stealing a car or driving a car dangerously toward another person), does the public employee's act nonetheless "aris[e] out of the operation or use of a motor vehicle"?  What is the required degree of causal connection, if any, between the "acts or omissions arising out of the operation or use of a motor vehicle" and the "losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony"?

## ORDER

We are asked to determine whether a police officer's killing of the decedent, Derek Adame, arose out of Adame's[1] "operation or use of a motor vehicle" pursuant to Arizona Revised Statutes ("A.R.S.") section 12-820.05(B). This central question of state law is dispositive of the instant case, and there is no controlling precedent from the Arizona Supreme Court. Ariz. R. Sup. Ct. 27(a). Therefore, we respectfully certify this question of law to the Arizona Supreme Court pursuant to Rule 27 of the Rules of the Supreme Court of Arizona.

## I. Factual Background

Around 1:00 a.m. on November 26, 2016, Officer Joseph Gruver responded to a report of a "suspicious" Nissan Sentra. *See Adame v. Gruver,* 819 F. App'x 526, 527 (9th Cir. 2020) ("*Adame I*").[2] He ran the vehicle's license plate number and learned that it was stolen. *See id.* Officer Gruver then put on his police car's bright "takedown" lights and approached the vehicle. *Id.* at 528. Inside was Adame, whom Officer Gruver observed "leaning over to the side" in the driver's seat, *id.*, though it was determined that Adame was likely asleep in the parked car, *see id.* at 530 (Schroeder, J., dissenting); *see also Adame v. City of Surprise*, No. CV-17-03200-PHX-GMS, 2019 WL 2247703, at *1 (D. Ariz. May 24, 2019), *rev'd and remanded sub nom. Adame I*, 819 F. App'x 526. "Officer Gruver drew his firearm, opened

---

[1] All references to Adame herein pertain to the decedent. Any references to "Plaintiffs-Appellees" otherwise include Adame's captioned representatives.

[2] We incorporate the undisputed facts contained in *Adame I* for purposes of this certification order.

the passenger door, announced himself as a police officer, and ordered Adame to show his hands and keep them visible on the steering wheel." *Adame I,* 819 F. App'x at 528. Adame complied while Officer Gruver awaited backup. *See id.*

As backup arrived, however, Adame attempted to flee, starting the vehicle's engine with his right hand. *See id.* "Officer Gruver immediately leaned into the vehicle, placing his left knee on the passenger seat as he reached with his left hand for Adame." *Id.* Adame nevertheless accelerated the vehicle, after which "Officer Gruver fired two shots," killing Adame instantly. *Id.* "The Nissan crashed into a parked truck a short distance away" after the shooting. *Id.*

Plaintiffs-Appellees' first amended complaint, filed on behalf of Adame on December 18, 2017, alleged (1) violations of 42 U.S.C. § 1983, namely the Fourth Amendment's prohibition against excessive force, as well as a Fourteenth Amendment due process violation against Officer Gruver and the City of Surprise (the "City"), (2) a state law wrongful death claim against the City, and (3) a racial discrimination claim against Officer Gruver and the City pursuant to 42 U.S.C. § 1981. By the time the Defendants filed a motion for summary judgment, the only remaining claims were the § 1983 excessive force and due process claims against Officer Gruver, and the state law wrongful death claim against the City.

The Defendants filed a motion for summary judgment on January 11, 2019, asserting, among other things, qualified immunity as to the excessive force and due process claims against Officer Gruver. The district court denied Officer Gruver's motion for summary judgment and, in *Adame I*, we reversed the district court's order. *See Adame I*, 819 F. App'x at 527. We held that Officer Gruver's "split-second

decision to shoot Adame, even if it violated Adame's constitutional rights, still entitle[d] him to qualified immunity." *Id.* at 529–30. We then remanded the case to the district court for resolution of the sole remaining claim— the state-law wrongful death claim against the City.

On June 11, 2021, the district court again denied summary judgment. It reasoned that "two statutes govern and limit the scope of civil liability for harm arising out of force employed by law enforcement officers" in this matter: (1) A.R.S. section 13-413, under which "civil liability cannot be imposed on a law enforcement officer for 'engaging in [justified] conduct,' regardless of the theory of recovery," (alteration in original) (quoting *Ryan v. Napier*, 425 P.3d 230, 239 (Ariz. 2021)) and (2) A.R.S. section 12-820.05(B), which provides that, "where a public employee commits a felony, a public entity can only be liable for the act if it had knowledge of the employee's propensity for that action," *Adame v. City of Surprise*, No. CV-17-03200-PHX-GMS, 2021 WL 2416802, at *2 (D. Ariz. June 11, 2021), though the "subsection does not apply to acts or omissions arising out of the operation or use of a motor vehicle," Ariz. Rev. Stat. § 12-820.05(B). The district court noted that "even if the shooting is presumed unjustified, Plaintiffs only prevail if" Officer Gruver's conduct did not amount to a criminal felony, or if Officer Gruver's "acts or omissions [arose] out of the operation or use of a motor vehicle." *Id.* (quoting section 12-820.05(B)). The district court ultimately concluded that "[t]here is, at the very least a genuine issue of material fact as to whether Officer Gruver's killing of [Adame] arose in substantial part out of [Adame]'s engagement of, and thus operation or use of, a motor vehicle." *Id.* at *3.

The City of Surprise timely appealed, and the district court invited the parties to argue whether the Ninth Circuit

has jurisdiction to consider this interlocutory appeal. *See* 28 U.S.C. § 1291.

## II. Explanation of Certification

This case presents two principal issues of first impression: (1) whether A.R.S. section 12-820.05(B) provides immunity from suit or a defense to liability, and (2) whether Adame's "operation or use of a motor vehicle" falls within A.R.S. section 12-820.05(B)'s motor vehicle exception.

1. We have "interlocutory appellate jurisdiction to review" a district court's denial of summary judgment on state-law claims only when "under *state* law, the immunity functions as an immunity from suit," not "a mere defense to liability." *Tuuamalemalo v. Greene*, 946 F.3d 471, 476 (9th Cir. 2019) (per curiam) (quoting *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011); *see also Liberal*, 632 F.3d at 1074 (noting that the portion of an order denying summary judgment as to state-law claims was "not an appealable final judgment under § 1291"). "The rationale . . . is that an interlocutory appeal is necessary to vindicate a state entity's entitlement to immunity from suit, which would be lost if a case were permitted to go to trial." *Taylor v. County of Pima*, 913 F.3d 930, 934 (9th Cir. 2019). An immunity from liability, however, "may be vindicated fully after final judgment, so the collateral-order doctrine does not encompass an interlocutory appeal from a denial of immunity from liability." *Id.*; *see also SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725 (9th Cir. 2017).

In other words, if A.R.S. section 12-820.05(B) provides immunity from suit, a district court's order dismissing the action would be final for purposes of appellate review. *See*

*P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142 (1993) (explaining that, under 28 U.S.C. § 1291, appellate courts have jurisdiction over "final decisions of the district courts," not decisions which are "but steps towards final judgment in which they will merge" (internal quotation marks omitted)).    But if the statute provides only a defense to liability, the district court's ruling is not final because it may be reviewed at a later phase of the litigation. *See id.*

Two District of Arizona cases have specifically held that A.R.S. section 12-820.05(B) provides a public entity with immunity from suit, not just from liability. *See Cameron v. Gila County*, No. CV11-80-PHX-JAT, 2011 WL 2115657, at *5 (D. Ariz. May 26, 2011) ("Because § 12-820.05(B)'s immunity is 'intended to protect a public entity from suit, not just liability, it should be resolved by the court at the earliest possible stage in the litigation.'" (quoting *Al-Asadi v. City of Phoenix*, No. CV-09-47-PHX-DGC, 2010 WL 3419728, at *6 (D. Ariz. Aug. 27, 2010))).    And other courts have suggested, without clearly stating, that section 12-820.05(B) confers immunity from suit.    *See Larson v. Berumen*, 187 F.3d 647 (9th Cir. 1999) (unpublished table decision) (analyzing A.R.S. section 12-820.05(B) on appeal without considering the current jurisdictional issue); *Gallagher v. Tucson Unified Sch. Dist.*, 349 P.3d 228, 231 (Ariz. Ct. App. 2015) (stating that, "[b]y its clear and unambiguous language, § 12-820.05(B) insulates a public entity from liability for loss caused by an employee's felony criminal acts," without expressly clarifying whether the statute confers immunity from suit rather than liability).

Arizona Revised Statutes section 12-820.05(B) is labeled as a statute offering immunity, not a mere defense to liability.    *See* Ariz. Rev. Stat. § 12-820-05 (Other Immunities).    And other subsections of the statute are

similarly labeled as statutes of immunity, while at least one specifically enumerates an affirmative defense. *Compare* Ariz. Rev. Stat. §§ 12-820.01 (Absolute Immunity), *and* 12-820.02 (Qualified Immunity), *with* § 12-820.03 (Affirmative Defense; Resolution by Trial). Still, because this issue involves the interpretation of an Arizona statute and the Arizona Supreme Court has not spoken on the matter, we certify whether A.R.S. section 12-820.05(B) provides immunity from suit or a defense to liability.

2. Both parties agree that Arizona state courts have yet to clarify the scope of A.R.S. section 12-820.05(B)'s motor vehicle exception. A.R.S. section 12-820.05(B) reads:

> A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action. This subsection does not apply to acts or omissions arising out of the operation or use of a motor vehicle.

We previously recognized that Arizona courts have interpreted the words "operation or use of a motor vehicle" in construing insurance policies. *See Larson*, 187 F.3d at 647. In those cases, an act arises out of the operation or use of a motor vehicle when there is a causal relationship between the injury and the ownership, maintenance, or use of a vehicle. *See, e.g.*, *Ruiz v. Farmers Ins. Co. of Ariz.*, 865 P.2d 762, 762–64 (Ariz. 1993) (holding "that the plaintiff's injuries [sustained in a car-to-car shooting] did not 'arise out of the ownership, maintenance or use' of an uninsured vehicle" because "[w]hat injured Ruiz was how the shotgun was used, not how the car was used"); *Mazon v.*

*Farmers Ins. Group*, 491 P.2d 455, 457 (Ariz. 1971) ("[W]e can find no causal relationship between an injury resulting from a stone thrown by an unknown person from an unidentifiable vehicle, and the ownership, maintenance or use of that vehicle."); *Benevides v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 911 P.2d 616, 619 (Ariz. Ct. App. 1995) (determining "that, for coverage to exist, an insured must be using the car pursuant to the 'inherent nature' of the vehicle[,]" which did not extend to being shot for playing the stereo too loudly); *Love v. Farmers Ins. Grp.*, 588 P.2d 364, 366–67 (Ariz. Ct. App. 1978) (finding that "the decedent's death did not arise from the ownership, maintenance or use of the car" where "[t]wo assailants abducted the decedent," used his "car to take him to a remote spot in the desert," and beat him to death); *Brenner v. Aetna Ins. Co.*, 445 P.2d 474, 477–78 (Ariz. Ct. App. 1968) ("[T]he fact that both the tortfeasor and the injured party were 'using' the car at the time does not make the injury one 'arising out of the . . . use' of the vehicle" where the appellant was accidentally shot while riding as a passenger in the appellee's car); *cf. Morari v. Atlantic Mut. Fire Ins. Co.*, 468 P.2d 564, 567 (Ariz. 1970) (finding that the unloading of a gun from a pickup truck was connected to the use of the vehicle for the purposes of automobile insurance policy because the "very purpose" of the vehicle was to be "operated and used in hunting").

Accordingly, in Arizona, the phrase "arising out of the operation or use of a motor vehicle" has been construed in the insurance context to require a causal relationship between the use of a vehicle and any underlying harm, thereby justifying the need for an insurance company's compensation for such harm.   However, the Arizona decisions cited above specifically analyzed the underlying language of the vehicle owners' insurance contracts to determine whether an incident warranted coverage.  *See,*

*e.g.*, *Benevides,* 911 P.2d at 619 ("[T]he insurer spells out its intent clearly in its policy."). While these cases provide persuasive guidance for interpreting the statute, they do not necessarily provide binding guidance in this context, as they rely on principles of contract interpretation.

It also bears mentioning that A.R.S. section 12-820.05(B)'s motor vehicle exception has not been discussed in cases with similar facts to the case at bar, making certification even more helpful in understanding the exception's scope. *See, e.g.*, *Harris v. City of Phoenix*, No. CV-20-00078-PHX-DLR, 2021 WL 4942662, at *1 (D. Ariz. Oct. 22, 2021) (where decedent "was shot to death by Officer Bertz on January 10, 2019 after officers ordered him from his car and he fled," the court agreed with the city's argument that "a municipality cannot be held liable for its employee's intentional use of force unless it actually knows of the employee's propensity to commit that particular act").

The type of immunity conferred by A.R.S. section 12-820.05(B), as well as the statute's general scope, are unanswered questions of state law that are dispositive in the instant case and that implicate issues of significant precedential and public policy importance. For these reasons, after careful consideration, we exercise our discretion to certify these questions to the Arizona Supreme Court. *See also Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003) (listing the factors considered when determining whether certification is appropriate).

### III.  Certified Questions

1. Does A.R.S. Section 12-820.05(B) provide immunity from suit or only immunity from liability? If the latter, the Court need not answer any further questions because our court would lack jurisdiction over this interlocutory

appeal.   If the former, please answer the following additional questions.

2.  With respect to the first sentence of subsection (B) of this statute:  If a law enforcement officer causes a death by the use of "excessive force" (here, a firearm), has the law enforcement officer committed "a criminal felony" as a matter of law?   If not, is a conviction of a felony required?  If not, is the determination whether the law enforcement officer committed "a criminal felony" a question of fact for the jury or a question of fact only for "the court"?   How does the determination whether an officer's use of "excessive force" was "justified" or "unjustified" pursuant to A.R.S. section 13-413 affect this inquiry?  Is the determination of whether the public employee's relevant acts or omissions were "justified" or "unjustified" for the jury to make, or for the court to make?  If this determination is for the court to make, for purposes of summary judgment, in applying A.R.S. section 12-820.05(B), is the reviewing court required to assume that the relevant acts or omissions of the public employee were "unjustified," given A.R.S. section 13-413?

3.  With respect to the second sentence of subsection (B) of this statute:  Does this sentence apply only to a public employee's operation or use of a motor vehicle?  Or, if the public employee's act takes place because another person operates or uses a motor vehicle (where, for example, a law enforcement officer fires because someone else is stealing a car or driving a car dangerously toward another person), does the public employee's act nonetheless "aris[e] out of the operation or use of a motor vehicle"?  What is the required degree of causal connection, if any, between the "acts or omissions arising out of the operation or use of a motor

vehicle" and the "losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony"?

## IV.  Counsel Information

The names and addresses of counsel, as required by Ariz. R. Sup. Ct. 27(a)(3)(C), are as follows:

> James M. Jellison, #012763, Jellison Law Offices, PLLC, 36889 North Tom Darlington Drive, Suite #B7, Box 2800, #304, Carefree, Arizona 85377, for Defendant-Appellant City of Surprise
>
> Dale K. Galipo, Esq. and Eric Valenzuela, Esq., Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367; and Anthony J. Ramirez, Esq., Warnock Mackinlay Law, PLLC, 7135 E. Camelback Road, Suite F-240, Scottsdale, Arizona 85251, for Plaintiff-Appellees Maria Adame, et. al.

## V.  Conclusion

The Clerk of Court shall forward an original and six copies of this certification order, under official seal, to the Arizona Supreme Court.  The Clerk is also ordered to transmit a copy of the Excerpts of Record filed in this appeal to the Arizona Supreme Court and, if requested by the Arizona Supreme Court, provide all or part of the district court record not included in the Excerpts of Record.  Ariz. R. Sup. Ct. 27(a)(5).

Submission of this appeal for decision is vacated and deferred pending the Arizona Supreme Court's final response to this certification order. The Clerk is directed to administratively close this docket, pending further order. The parties shall notify the Clerk of this court within fourteen days of the Arizona Supreme Court's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the Arizona Supreme Court's issuance of a decision.

**QUESTION        CERTIFIED;        PROCEEDINGS STAYED.**

/s/ Mary H. Murguia
Mary H. Murguia,
Chief Circuit Judge